William CORDERO, et al.,
Plaintiffs, Appellees,

v.

Juan De JESUS–MENDEZ, etc.,
Defendant, Appellant.

William CORDERO, et al.,
Plaintiffs, Appellees,

v.

Juan De JESUS–MENDEZ, etc., et al.,
Defendants, Appellees. (Two Cases)

Appeal of MUNICIPAL GOVERNMENT
OF MOCA, Defendant, Appellant.

William CORDERO, et al.,
Plaintiffs, Appellees,

v.

Juan De JESUS–MENDEZ,
Defendant, Appellant.

Appeal of Irma VARGAS–HIDALGO, Ra-
monita Bourdon, Jose Conty–Loperena,
Luis A. Perez–Nieves, Eugenio L. Perez
and Vicente Mendez, Appellants.

Nos. 87–1011, 87–1532, 88–1005, 87–1012,
87–1530, 88–1006, 88–1126 and 87–1531.

United States Court of Appeals,
First Circuit.

Heard July 26, 1988.

Decided Jan. 24, 1989.

As Amended Jan. 27, 1989.

Rehearing and Rehearing En Banc
Denied March 7, 1989.

4

Jose Angel Rey with whom Manuel Alvarado, Elba Rosa Rodriguez, Saldana, Rey, Moran & Alvarado, Hato Rey, P.R., Hector Rivera–Cruz, Secretary of Justice, Rafael Ortiz–Carrion, Sol. Gen., Norma Cotti–Cruz, Deputy Sol. Gen., and Vanessa Ramirez, Hato Rey, P.R., Asst. Sol. Gen., were on joint briefs for defendants in Nos. 87–1011, 87–1012, 87–1530, 87–1532, 88–1005, and 88–1006.

Juan Rafael Gonzalez Munoz with whom Hector Rivera–Cruz, Secretary of Justice, Rafael Ortiz–Carrion, Sol. Gen., Norma Cotti–Cruz, Deputy Sol. Gen., and Vanessa Ramirez, Asst. Sol. Gen., Hato Rey, P.R., were on brief for defendant Mun. Government of Moca.

Miguel Pagan, San Juan, P.R., with whom Eliezer Aldarondo Ortiz, Hato Rey, P.R., and Aldarondo & Lopez Bras were on briefs for plaintiffs in Nos. 87–1011, 87–1012, 87–1530, 87–1532, 88–1005, and 88–1006.

Jose Angel Rey with whom Paul B. Smith, Jr., Olivette Sagebien and Saldana, Rey, Moran and Alvarado, Hato Rey, P.R., were on brief for defendants in No. 88–1126.

Miguel Pagan, San Juan, P.R., for plaintiffs in No. 88–1126.

Israel Roldan Gonzalez, Aguadilla, P.R., for plaintiffs-appellants Irma Vargas–Hidalgo, Ramonita Bourdon, Jose Conty–Loperena, Luis A. Perez–Nieves, Eugenio L. Perez and Vicente Mendez in No. 87–1531.

Jose Angel Rey with whom Elba Rosa Rodriguez, Saldana, Rey, Moran & Alvarado, Hato Rey, P.R., Hector Rivera–Cruz, Secretary of Justice, Rafael Ortiz–Carrion, Sol. Gen., and Norma Cotti Cruz, Deputy Sol. Gen., were on joint brief for defendants in No. 87–1531.

Before BOWNES, NOONAN * and SELYA, Circuit Judges.

BOWNES, Circuit Judge.

This case involves appeals from jury verdicts and judgments in a group of consolidated civil rights actions brought pursuant to 42 U.S.C. § 1983 and the laws of Puerto Rico by municipal employees against the Municipality of Moca, Puerto Rico, and its Mayor, Juan de Jesus Mendez. Originally, forty employees brought suit. Thirty of them received judgments in their favor in the district court; they are plaintiffs-appellees in the appeal by defendants-appellants, the Municipality of Moca and its Mayor. The district court granted judgment n.o.v. against six of the employees. They are plaintiffs-appellants in an appeal against defendants-appellees, the Municipality of Moca and the Mayor. The district court dismissed the suits of four employees who did not testify at the trial for insufficiency of evidence; no appeal in those suits has been taken. At the outset, there was an additional defendant, the Personnel Officer of Moca, Juan de Betran. The complaint was dismissed as to him for insufficiency of evidence, and there has been no appeal. There is also an appeal by the Mayor from a post-judgment order holding him in contempt.

I.

The gravamen of the case is that the federal constitutional rights of the employees to freedom of speech and due process of law were violated because they were

summarily discharged without a hearing for political reasons. The genesis of this case, as with most other Puerto Rico political firing cases that have come before us, was the election of 1984. Prior to this election the Mayor of Moca belonged to the New Progressive Party (NPP), as did a majority of the Municipal Assembly. After the election, a member of the Popular Democratic Party (PDP), Juan de Jesus Mendez, became Mayor. The NPP, however, still retained control of the Municipal Assembly. It has been stipulated that the Mayor is chief executive and hiring authority for the municipality and that he acted within "his functions and prerogatives" in the dismissals of the plaintiffs. The divided political control of the municipality, therefore, is not a factor in any of the issues before us.

## II.

We deal first with certain issues raised on appeal by the municipality and its Mayor.

### THE JURY INSTRUCTION ON CAUSATION

■ Appellants claim that it was reversible error for the court to refuse to instruct the jury that it could hold the defendants liable only if it found that the employees would not have been discharged "but for" their political affiliation. The force of this objection is considerably weakened by defendants' failure to follow the requirements of Fed.R.Civ.P. 51, which states in pertinent part: "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." No objection was made by defendants after the charge and "before the jury retire[d] to consider its verdict." We have consistently and emphatically held that failure to follow the letter of the rule constitutes a waiver of the objection. *See Wells Real Estate Inc. v. Greater Lowell Bd. of Realtors,* 850 F.2d 803, 809 (1st Cir.) (collecting cases), *cert. denied,* — U.S. —, 109 S.Ct. 392, 102 L.Ed.2d 381 (1988). Although there is

a "plain error" exception for failure to follow the rule, we have held that such exception "should be applied sparingly and only in exceptional cases or under peculiar circumstances to prevent a clear miscarriage of justice." *Id.* (quoting *Nimrod v. Sylvester,* 369 F.2d 870, 873 (1st Cir.1966)). The court's refusal to give the requested instruction did not, considering the charge as a whole, amount to plain error. Since, however, this may be a recurring issue, we think it advisable to review the instructions in light of the applicable law.

It is appellants' position that the "but for" requirement is mandated by *Mt. Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977) and *Givhan v. Western Line Consol. School Dist.,* 439 U.S. 410, 416–17, 99 S.Ct. 693, 697, 58 L.Ed.2d 619 (1979). In *Mt. Healthy,* the court held that in a case alleging a constitutional violation for refusal to rehire, a necessary finding was whether the Board "had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's re-employment even in the absence of the protected conduct." 429 U.S. at 287, 97 S.Ct. at 576. The "but for" language, which appellants say is vital, is contained in *Givhan:*

> Thus, the case came to the Court of Appeals in very much the same posture as *Mt. Healthy* was presented to this Court. And while the District Court found that petitioner's "criticism" was the "primary" reason for the School District's failure to rehire her, it did not find that she would have been rehired *but for* her criticism. Respondents' *Mt. Healthy* claim called for a factual determination which could not, on this record, be resolved by the Court of Appeals.

439 U.S. at 417, 99 S.Ct. at 697 (footnote omitted). We have explicitly adopted the "but for" test in political firing cases, as well as in other contexts. *See Elwood v. Pina,* 815 F.2d 173, 176 (1st Cir.1987).

The record discloses that defendants denied that the employees were discharged for political reasons and advanced several plausible reasons for their terminations.

The district court so acknowledged in its instructions: "They [defendants] claim that they acted in good faith following the law. They claim that some employees were fired because of their trust or confidential status; others because of lack of funds or tasks and others because their contracts had expired and could not be renewed." The court gave two instructions on the standard to be applied:

> [I]f you find from the evidence that the Mayor and the Municipality of Moca ... discriminated against the twenty-three irregular employees on the basis of political affiliation, you must find for the plaintiffs.

> \* \* \* \* \* \*

> Plaintiffs must prove that their political affiliation was the motivating factor in the decision to separate them from the positions they occupied. Once again, we don't isolate evidence. Isolated evidence that one party or the other was from a given political party should not be enough. You must look at all the evidence, direct and circumstantial, to determine if political affiliation was the motivating factor for the personnel actions taken by the Mayor.

> Notwithstanding this fact, you must find for defendants if they proved the existence of other grounds that would have been bona fide grounds for the personnel actions, even in the absence of the alleged politically discriminatory motives.

While the second instruction comes close to the *Mt. Healthy–Givhan* standard, it can be argued that it does not quite measure up.

■ Although the words "but for" are not magic or talismanic, they are the words used in *Givhan* and expressly adopted by this Circuit as an indispensable part of the analysis in this kind of case. *Elwood v. Pina*, 815 F.2d at 176. The use of the phrase "but for" clarifies and focuses the issue. We think it should be used in the instructions in a case such as this. It follows that the phrase should also be used in written interrogatories submitted to the jury where the jury is determining whether or not an individual has been discharged for reasons of political affiliation.

## THE POST–VERDICT AWARD OF BACK PAY BY THE DISTRICT COURT

■ The jury, in answer to written interrogatories, found the Mayor liable and awarded compensatory and punitive damages to the individual plaintiffs. In its judgment order following the verdict, the district court ordered that the plaintiffs be reinstated to their respective positions "with back pay, at the same salary, and with the same fringe benefits they would otherwise be earning and receiving but for their discharges." The award of back pay by the court was error for two reasons. One, the jury should have been instructed that back pay was a factor to be taken into consideration in determining compensatory damages. Two, because the jury was not instructed to disregard the extensive evidence of the plaintiffs' salaries and pay scales which had been admitted at trial, it may well have used this evidence in computing compensatory damages, resulting in duplicative damages. In *Santiago–Negron v. Castro–Davila*, 865 F.2d 431 (1st Cir. 1989), we held after extensive analysis of the pertinent cases, "that in a § 1983 case based upon an alleged unconstitutional political firing where the issues of liability and compensatory damages will be determined by a jury, back pay shall be considered by the jury as one of the items of compensatory damages." *Id.* at 441. *See also* at 437–440 for discussion of the issue. In *Santiago–Negron*, as here, the district court made the back pay award after the jury had found liability and rendered verdicts awarding the individual plaintiffs compensatory and punitive damages. And as here, there was evidence of the salaries and wages of the plaintiffs but no instruction to disregard it. This omission was compounded by an instruction as in *Santiago–Negron*, that, in considering compensatory damages, the jury was not limited to those items of damages enumerated by the court but that it should consider "all matters in evidence." The jury,

therefore, could have construed this as a command to consider the evidence of back pay in determining compensatory damages. We realize, of course, that the district court did not have the benefit of *Santiago–Negron* when it tried this case, but it is now controlling law in this circuit. There will, therefore, have to be a new trial on the question of damages.

## THE DISTRICT COURT'S NULLIFICATION OF THE JURY'S ANSWER TO THE FIRST INTERROGATORY

The district court submitted 27 special questions to the jury. The first question was: "1. Did the Mayor, Juan de Jesus Mendez, act, regarding plaintiffs, pursuant to the official policy of the municipality of Moca?" The jury answered "No" to the question. During the charge the court had instructed the jury as follows:

If the claimed unconstitutional conduct of the Mayor as a hiring authority is to bind the Municipality of Moca, there must be proof that the acts of the Mayor were done pursuant to the policy of the municipality of which he was the chief executive. That is, that the alleged unconstitutional conduct was more than an isolated act of the Mayor. In other words, you must find that the alleged conduct was that of the Mayor and of the municipality which he heads.

In deciding this issue, consider the position and executive power of the Mayor, his role in the municipality and whether he acted in his official capacity.

There was no objection by either party to the instruction or special question. We are constrained to say that, in light of the fact that the Mayor and the majority of the Municipal Assembly were of opposing political parties, the answer of the jury made good sense.

After verdict, the court, *sua sponte*, disregarded the jury answer to question one and issued judgment against both the municipality and the Mayor ordering that the employees be reinstated and that both the

municipality and the Mayor pay the compensatory damages as found by the jury.[1]

■ We agree with the district court that there is no issue of respondeat superior because the actions of the Mayor constituted the official policy of the municipality. In *Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Court held:

We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, *whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy,* inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 694, 98 S.Ct. at 2037 (emphasis added). The Mayor is not, in the context of this case, an employee or agent of the municipality. He is one "whose edicts or acts may fairly be said to represent official policy." Under Puerto Rico law, one of the express powers given to mayors of municipalities is: "To appoint all the officials and employees of the municipal executive branch, and remove them from office whenever necessary for the good of the service, pursuant to the procedures provided herein." P.R.Laws Ann. tit. 21, ch. 155, § 3002(15) (1980). In *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), a plurality of the Court held: "We hold that municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* at 483–84, 106 S.Ct. at 1300. In the course of its opinion the Court stated:

*Monell's* language makes clear that it expressly envisioned other officials "whose acts or edicts may fairly be said to represent official policy," *Monell su-*

---

**1.** The jury also assessed punitive damages against the Mayor in the amount of $100 for each plaintiff.

*pra,* at 694 [98 S.Ct. at 2037], and whose decisions therefore may give rise to municipal liability under § 1983.

*Id.* at 480, 106 S.Ct. at 1298.

\* \* \* \* \* \*

More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly. To deny compensation to the victim would therefore be contrary to the fundamental purpose of § 1983.

*Id.* at 481, 106 S.Ct. at 1298. The Municipality of Moca was liable as a matter of law for an unconstitutional discharge of its municipal employees by the Mayor. Interrogatory one, therefore, should not have been submitted to the jury. Nor should the jury have been instructed as it was. The question is what we should do.

The municipality's position is that we should reinstate the jury's finding of no liability. We cannot do this, however, because as already pointed out, it would be manifest legal error. If the district court had accepted the jury's answer and the employees had appealed, we would have had to set the answer aside and rule that the municipality and the Mayor were both liable.

The appellees have not briefed this issue. We assume that this is because, as the district court pointed out at the end of its judgment order, the Commonwealth had agreed, pursuant to P.R.Laws Ann. tit. 32, ch. 251, § 3092, to bear the expense of the Mayor's legal representation and the payment of the judgment, costs and attorney's fees.

This is not a question of determining whether the jury's answer to question one was consistent with its answer to the question on punitive damages against the Mayor (no. 27), as the district court suggests. The issue is what impact the effect of the instruction and the submission of the question to the jury could have had on its determination of liability and its assessment of damages. Although this is a unique situation, a good working analogy is review of erroneous jury instructions. "[A]n error in jury instructions will mandate reversal of a judgment only if the error is determined to have been prejudicial, based on a review of the record as a whole." *Connors v. McNulty,* 697 F.2d 18, 21 (1st Cir.1983). *See also Brown v. Freedman Baking Co., Inc.,* 810 F.2d 6, 9–10 (1st Cir.1987); *Almonte v. National Union Fire Ins. Co.,* 787 F.2d 763, 767 (1st Cir.1986).

The only case we have found involving a similar procedure by the district court is *Depositors Trust Co. v. Slobusky,* 692 F.2d 205 (1st Cir.1982). In *Slobusky* the court submitted a special interrogatory requested by defendant-appellant. Despite the jury's answer, the court decided to the contrary. We found reversal unwarranted because the defendant-appellant had "foisted" upon the court an incorrect view of the law. We held: "A district court is not required to decide a case incorrectly merely because it is initially persuaded by a party to grant jury instructions overly generous to that party. Any prejudice here, moreover, seems to us more theoretical than real." *Id.* at 210. The situation here is different. The interrogatory was not "foisted" upon the court by either of the parties. Indeed, it would appear that the special verdict questions were not furnished to counsel or discussed with them prior to the charge.

Since we have found that question one should not, as a matter of law, have been submitted to the jury, the seventh amendment right to have the jury decide issues of fact is not implicated. There can be little doubt that submission of the question to the jury may have prejudiced either the municipality, the Mayor, or both on the issue of damages. This is another reason, therefore, for ordering a new trial on damages. We can see no reason, however, to require a new trial on liability because of this error. Based on our review of the record, it is clear that there was more than sufficient evidence for a jury to find that the employees were discharged because of their political affiliation. This would be so whether or not the Mayor was following a policy of the municipality.

We cannot close our discussion of this issue, however, without remarking that where, as here, a number of special questions are to be submitted to the jury, it can do no harm, and may do considerable good, to submit the questions to counsel for comment before they are given to the jury for decision.

## III.

## THE EMPLOYEE INSTRUCTIONS AND RULINGS

The jury rendered verdicts in favor of thirty-six employees in varying amounts. The district court subsequently entered judgments n.o.v. as to six employees. The municipality and the Mayor appeal the court's instructions and rulings as to the thirty employees who received final judgments in their favor. The six employees appeal the district court's grant of judgment n.o.v. against them.

Before we discuss the issues in detail, it is necessary to point out that the employees fall into separate categories: twenty-three employees were characterized in the pretrial stipulation as "irregular and/or transitory"; two were over 70 years of age—septuagenarian; three were "contract" employees; and eight were classified as holding "confidential" positions. Defendants have not challenged the jury findings that the discharges were politically motivated. Their objections focus on the judge's instructions and post-trial rulings. Our review of the court's instructions and rulings, therefore, accepts the jury's findings that all of the employees were discharged because of their political affiliation.

*The Confidential Employees*

Before discussing the specific appeals some general observations are in order. P.R.Laws Ann. tit. 3, § 1350 (1975) states: "[C]onfidential employees shall be of free selection and removal." There can be no claim by such employees of a constitutional right to a due process hearing before termi-

nation. *See Roure v. Hernandez Colon,* 824 F.2d 139, 141–42 (1st Cir.1987); *Raffucci Alvarado v. Sonia Zayas,* 816 F.2d 818, 820–21 (1st Cir.1987).

We have held that a confidential classification is not determinative of the *"Elrod–Branti"* question [2] but is "entitled to some deference." *Jimenez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 246 (1st Cir.1986), *cert. denied,* 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987); *Juarbe–Angueira v. Arias,* 831 F.2d 11, 14 (1st Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 1222, 99 L.Ed.2d 423 (1988).

By now there is a sizable body of case law in this circuit devoted to the *"Elrod–Branti"* question. We have taken a two-step approach to the question whether the hiring and firing authority can show that political affiliation is an appropriate requirement for the effective performance of the position involved. The first step is to decide whether the position at issue relates to partisan political interests or concerns. The step two analysis is described as follows:

> [T]he next step is to examine the particular responsibilities of the position to determine whether it resembles a policymaker, a privy to confidential information, a communicator, or some office holder whose function is such that party affiliation is an equally appropriate requirement. We would note that in conducting this inquiry, courts focus on the powers inherent in a given office, as opposed to the functions performed by a particular occupant of that office.

*Jimenez Fuentes v. Torres Gaztambide,* 807 F.2d at 242. *See also Juarbe–Angueira v. Arias,* 831 F.2d at 14; *Zayas–Rodriguez v. Hernandez,* 830 F.2d 1 (1st Cir.1987); *Roman Melendez v. Inclan,* 826 F.2d 130, 132–33 (1st Cir.1987); *Rosario Nevarez v. Torres Gaztambide,* 820 F.2d 525, 527 (1st Cir.1987); *Mendez–Palou v. Rohena–Betancourt,* 813 F.2d 1255, 1258 (1st Cir.1987); *Collazo Rivera v. Torres Gaztambide,* 812 F.2d 258, 260 (1st Cir.1987).

---

**2.** *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980).

In reviewing the district court's instructions and rulings, we have considered the Job Classification criteria prepared pursuant to the Puerto Rico Public Personnel Act, as well as the job descriptions given to the positions by the municipality. We have also, of course, considered all pertinent testimony.

*The Appeals Of the Six Employees*

After the jury verdict, the district court entered a judgment n.o.v. in favor of the defendants as to six employees on the ground that the case law of the circuit compelled the finding that political affiliation was an appropriate requirement for the effective performance of the duties of the positions held by them. The names and positions of the employees are:

1. Irma Vargas Hidalgo—Municipal Secretary;
2. Ramonita Bourdon—Officer in Charge of Human Resources, Personnel Official;
3. Jose Conty Loperena—Director, Civil Defense;
4. Luis A. Perez Nieves—Director of Finance;
5. Eugenio L. Perez—Director, Public Relations; and
6. Vincente Mendez—Administrative Aide, Assistant Director of Public Works.

All six employees were members of the NPP prior to and at the time of their discharge. They have appealed on two grounds: (1) that since the motion for judgment n.o.v. only asked that the Mayor be given qualified immunity, the district court had no right to go any further than the prayer of the motion; and (2) that the court erred as a matter of law in finding that the positions held by these plaintiffs were political.

■ We find little merit in appellants' claim that the district court's ruling on the motion for judgment n.o.v. must be confined strictly to the prayer of the motion. One of the hard fought issues in this case was whether the positions held by these appellants were political. We are not faced here, as in many cases involving alleged unconstitutional discharges, with an interlocutory appeal on the question of qualified immunity. The basic issue as to these employees is whether their discharge by the Mayor violated their first amendment constitutional rights. The district court, therefore, had a right in ruling on the motion for judgment n.o.v. to view the case as a whole and decide the question of liability and not limit itself to the prayer for qualified immunity. We are aware, of course, that the qualified immunity of the Mayor does not extend to the municipality and that appellants have a good practical reason for seeking to confine the district court to the prayer of the motion. This, however, is not a good legal reason for restricting the discretion of the district court to decide a motion for judgment n.o.v. fully, even though the prayer of the motion asks only for a partial decision. The district court may have felt that it was easier to decide the question of liability than to determine whether the first amendment rights of the office holder was or was not clearly established. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Mendez–Palou v. Rohena–Bettancourt,* 813 F.2d at 1259.

It must be noted that the district court had originally denied the motion for judgment n.o.v., and the appeal was docketed in the circuit court. The district court then requested the circuit court for leave to reconsider the motion, which was granted. The whole purpose of such reconsideration would be thwarted were we to now decide that the district court had no authority to decide the motion on the grounds that it did. We have found no case law or authority suggesting that in a situation such as this the district court can decide only what is specifically requested in the motion for judgment n.o.v., nor have appellants cited any. We see no good reason for abridging the discretion of the district court by shackling it to the specifics of the prayer of the motion for judgment n.o.v.

*The Municipal Secretary*

■ As part of the classification process under the Puerto Rico Public Service Personnel Act, the following general state-

ment of duties of a municipal secretary was prepared:

> The employee acts as Municipal Secretary. Receives general instructions from the Mayor on the work to be performed. The same is reviewed superficially through meetings and reports to verify if it was performed according to instructions given. Utilizes his/her own criteria and judgment in the execution of his/her tasks.

The municipality job description is that the Municipal Secretary:

> Will keep under her custody all documents of the Municipality of Moca, bids, deeds on lands, roads registration inventories, historical documents, and copies of lease contracts.
>
> Will perform Auditing functions whenever the situation so warrants.
>
> Will be in charge of some of the purchases for office materials for official use of the Municipality and will distribute the same when requested to do so.

According to her own testimony, the holder of this office, Irma Vargas Hildago, reported directly to the Mayor. She also testified that she acted as Secretary of the Municipal Assembly from 1977 to 1981. Under Puerto Rico law, a secretary of the Municipal Assembly is a designated municipal government official. Organic Act of the Municipalities, P.R.Laws Ann. tit. 21, § 2055 (1980).

In a case directly on point, the Supreme Court of Puerto Rico, after listing the duties assigned to a municipal secretary under the law [3] held as follows:

> From this list of legislative tasks it appears that the Municipal Secretary has, with respect to the municipality and insofar as locally applicable, all the powers, functions, and duties that the Secretary of State has with regard to the Government of the Commonwealth of Puerto Rico. These duties, together with the inherent political nature associated with the office of mayor and with the functions arising from the deposition taken to

Feliciano Rodriguez, undoubtedly reveal that the political affiliation is not only a dynamic and essential requirement for the discharge of the office, but that it was the principal factor which gave rise to his designation.

*Juan Feliciano Rodriguez v. Municipality of Fajardo and Mayor Hipolito Robles Suarez*, 115 D.P.R. 675 (1984), Translation Opinion at p. 4.

We have held that the opinions of the Puerto Rico Supreme Court on the scope and effect of *Elrod–Branti* should be considered for their persuasive effect but are not conclusive on the state of the law. *Rodriguez Rodriguez v. Munoz Munoz*, 808 F.2d 138, 141–42 (1st Cir.1986). Here the Supreme Court has defined the meaning and scope of a municipal secretary's duties. We find its analysis helpful and persuasive.

We find that the position of municipal secretary passes the two-step test of *Jimenez Fuentes* and that the first amendment rights of Irma Vargas Hidalgo were not implicated by her discharge on partisan political grounds.

*The Personnel Director*

We have no difficulty finding that the two steps of the *Jimenez Fuentes* test have been met. It seems self evident that the personnel director of a municipality should be of the same political party as the Mayor, and the duties inherent in the position make it clear that "party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti v. Finkel*, 445 U.S. 507, 518, 100 S.Ct. 1287, 1295, 63 L.Ed.2d 574 (1980). The classification description for the position states:

> The employee acts as municipal Personnel Officer. Possesses ample liberty to make necessary decisions within the area of his/her position and utilizes his/her own judgment and criteria to a great extent in the performance of his/her duties. His/her work is evaluated and

---

**3.** The court cited specifically: "21 L.P.R.A. § 1157(2), (3) and (4); §§ 1257, 1258 and 1264, and 10 L.P.R.A. § 34."

reviewed through reports, meetings with his/her immediate supervisor and through the results obtained.

The tasks that may be assigned to a municipal personnel director under the classification criteria include the following:

1. Plans, coordinates, and directs all activities in the field of municipal personnel administration;

2. Advises and orients the Mayor, officials, and other employees on the implementation of normative policy and procedures related to personnel administration;

3. Provides information on employment opportunities to the public and to employees;

4. Acts as liaison between the municipality and private enterprise regarding employment;

5. Prepares all documents pertaining to appointments, promotions, transfers and demotions of municipal personnel;

6. Prepares payrolls of all regular and irregular employees;

7. Administers the Municipality's Classification and Compensation Plan;

8. Prepares vacancy announcements for recruiting and is responsible for organizing training sessions for the personnel, among other tasks.

The job description for the Personnel Director of Moca is as follows:

1. Will be in charge of completing employment applications, classifying them by positions and date of application.

2. Must handle personnel problems.

3. Will keep records of employees' attendance and absences and will keep daily accounts of leave used.

4. Will establish a training needs program.

5. Must notify employees of all change and payroll holdings to which every employee is subjected.

6. Will insure that employees' records are totally complete with all documents.

The first amendment rights of Personnel Director Ramonita Bourdon were not violated when she was discharged by the Mayor upon his taking office.

## Director of Civil Defense

■ Unlike the prior position, the title here is of no help in determining whether the first step of our inquiry has been met. Since no classification criteria or job description were put in evidence, we examine the pertinent parts of the statute establishing Municipal Civil Defense Agencies:

All the municipalities of the Commonwealth of Puerto Rico are hereby directed to establish a Municipal Civil Defense Agency, in accordance with the guidelines that the Commonwealth Director may establish for such purposes, as provided in section 171e(N)(i) of this title.

The Municipal Civil Defense Agency shall be directed by a Municipal Civil Defense Director appointed by the Mayor in consultation with the Commonwealth Director. The appointment of the Municipal Director shall require approval by the Municipal Assembly.

The Municipal Director shall be directly responsible to the Mayor. However, the Municipal Director shall organize and administer the Municipal Civil Defense Agency in accordance with the guidelines of the Commonwealth Director. However, the Mayor is vested with the authority to make such changes of personnel as he may deem necessary or convenient within the Municipal Civil Defense Agency.

P.R.Laws Ann. tit. 25, § 171o.

There are three significant provisions. The first is that the appointment is made by the Mayor. Although the Mayor's appointing power is circumscribed by the requirement that he consult with the Commonwealth Director before making the appointment and obtain the approval of the Municipal Assembly, the Mayor is the appointing official. This connotes the consideration of political factors by the Mayor.

The second significant provision is that the "Municipal Director shall be directly responsible to the Mayor." It is axiomatic that except in rare instances, the wheels of government run smoother when the person in charge and the one responsible to him/her are of the same political party.

The third significant provision vests the mayor "with the authority to make such changes of personnel as he may deem *necessary or convenient* within the Municipal Civil Defense Agency." (Emphasis ours.) Under this provision, the Mayor has carte blanche authority to remove any of the Civil Defense personnel. This would seem to include the Director. Political reasons for removal would come within the meaning of "convenient." The authorizing statute also makes it clear that the Municipal Civil Defense Director formulates policy:

Each Municipal Civil Defense Agency shall prepare and keep up-to-date a Municipal Plan of Operations for the Control of Emergencies and Disasters and shall send a copy thereof to the Commonwealth Director. The Municipal Plan shall be coordinated, insofar as possible, with the Commonwealth Plan.

Each Municipal Civil Defense Agency may prescribe, amend and revoke such regulations and may issue, amend and rescind such orders as may be necessary to put into execution the measures and activities of civil defense within the municipality concerned. The said regulations and orders, their amendments, revocation or rescission shall take effect as soon as they are approved by the Commonwealth Director.

P.R.Laws Ann. tit. 25, § 171o.

Policy and politics are usually intertwined. Under the statute the Mayor and Director of Civil Defense must work closely together, with the ultimate responsibility and authority vested in the Mayor. It would be difficult to eliminate political considerations when choosing a person for the office of Director of Civil Defense. The first amendment rights of Jose Conty Loperena were not implicated when he was discharged by the Mayor.

*The Director of Finance*

 The classification criteria contains the following description of this position:

The employee acts as Director of Finance. Normally receives general instructions on the work to be done and specific or detail instructions in new or unforeseen situations. Possesses ample freedom to make necessary decisions and to utilize his own criteria and judgment in the discharge of his/her tasks. His/her work is evaluated through reports and meetings to verify if the same was carried out in accordance with municipal fiscal policies currently in force.

The specific duties that may be involved are described as follows:

Plans, coordinates, directs, and supervises all activities in the Finance area. Interprets accounting circulars, regulations and manuals issued by the Department of Treasury. Is responsible for establishing and implementing the entire municipal accounting system. Supervises activities related to the disbursement of municipal funds. Develops and establishes Accounting procedures to keep adequate records of and to account for the municipality's funds. Reviews and supervises the pre-audit and accountability of all documents pertaining to accounting, disbursement and revenues. Prepares the Annual Report on the status of appropriations, accounts and uncommitted balances. Prepares monthly reports of activities conducted within his/her work area. Advises municipal officials and employees on fiscal matters. Prepares correspondence related to his/her duties. Handles telephone calls. Performs other related tasks.

The job description of the Municipality of Moca states that the Director of Finance:

1. Shall be the person who will have under his supervision the entire municipal accounting system, and shall insure that everything is done as provided by the Department of the Treasury and the Municipal Services Administration, and as pertains to Municipal Accounting.

2. Shall be responsible for all reports required by the Municipal Services Administration and other agencies being submitted on the dates set forth by law.

The Director of Finance reports directly to the Mayor. The salary is the highest of all city officials, with the exception of that of the Mayor.

Considering all the factors, we find that the two-step requirements of *Jimenez*

*Fuentes* have been met. The Mayor had the right to discharge Luis A. Perez Nieves from the position of Director of Finance for political reasons.

*Director of Public Relations*

We start our analysis of this position by quoting directly from *Branti v. Finkel,* 445 U.S. at 518, 100 S.Ct. at 1295: "[T]he Governor of a State may appropriately believe that the official duties of various assistants who help him write speeches, explain his views to the press, or communicate with the legislature cannot be performed effectively unless those persons share his political beliefs and party commitments." We think this also applies to the Mayor of a municipality. The job description for the Municipality of Moca gives the Director of Public Relations the following functions:

1. Promote good relations between the Municipal Administration and the Community in general and with the various government agencies and religious entities.

2. Oversee the Mayor's calendar so that the latter is present promptly on the correct date and time and place.

The description contained in the classification criteria is:

The employee is responsible for the planning, coordination, and direction of all cultural and civic activities conducted in the municipality. Receives specific and detailed instructions on the work to be performed, but has freedom to make the necessary decisions within his/her areas. Utilizes his/her own judgement and criteria in the performance of his/her duties. The work is evaluated and supervised by the Mayor by the results obtained through meetings and reports to verify if it was done in accordance with municipal policies and instructions given.

The specific duties that may be performed are described in the classification criteria:

Plans, coordinates, and directs the work of the Municipal Public Relations office. Responsible for establishing and maintaining an effective Public Relations Program with the community.

Develops and conducts civil and cultural activities in the Municipality.

Coordinates the Mayor's press conferences and presentations before the communications media and civic, cultural and government entities.

Drafts speeches, press releases, and letters for the Mayor, as required.

Represents the Mayor at meetings, conferences and civic and cultural activities.

Responsible for keeping the Mayor's activities calendar up to date.

Receives visitors and furnishes them the information they may require.

Performs other related tasks.

The duties of the Director of Public Relations bring the position squarely within the language of *Branti* quoted at the start of this section. The discharge of Eugenio L. Perez as Director of Public Relations for the Municipality of Moca did not implicate his first amendment rights.

*Administrative Aide, Assistant Director of Public Works*

Despite the title, "Administrative Aide" which implies that it is a political job, this is the most difficult position to assess. There is a dispute between the parties as to whether the holder of the position, Vincente Mendez Arocho, was a career or confidential employee. He had been classified as a career employee by the former Mayor. After the defendant Mayor took office he discharged Mendez, along with most of the plaintiffs, on January 16, 1985. Unlike the other plaintiffs, however, Mendez was reinstated on February 1. He was then reclassified as a confidential employee and discharged five days later.

There were no classification criteria introduced in evidence as to this position. We, therefore, assume that there were none. The job description states that this official:

Will be in charge of the supervision of Municipal Public Works Personnel. Will assist in the supervision of the good use and maintenance of Municipal equipment. Will report in writing to the Director of Public Works or to the appointing au-

thority of any abnormality observed in this regard.

In his testimony, Mendez described himself as "Foreman of the Municipality." Although the defendants described the position as "Administrative Assistant to the Mayor," Brief in no. 87–1531 at p. 39, there is no evidence that the holder of the position could or did act in that capacity. According to the job description and the testimony as to what the job holder actually did, the duties inherent in this position were limited to the Public Works Department and the job holder was responsible to the Director of Public Works.

Defendants rely on *Tomczak v. City of Chicago,* 765 F.2d 633 (7th Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 313, 88 L.Ed. 2d 289 (1985) and *Roman Melendez v. Inclan,* 826 F.2d 130. Both cases are inapposite. In *Tomczak,* the duties, which the court held to implicate politics "included the responsibility for all Bureau of Water activities as they relate to the operation, maintenance, repair or new construction of the water distribution system...." *Tomczak,* 765 F.2d at 639. There is no evidence of comparable responsibility in this case even taking into consideration the difference in size between Chicago and Moca. Nor does *Inclan* apply. In *Inclan,* the plaintiff was a regional director of Puerto Rico's General Services Administration. The director formulated policy, dealt directly with the public and had overall responsibility for the program in his region. *Inclan,* 826 F.2d at 134–35. No analogy can be made between the duties of the regional director in *Inclan* and the position at issue here.

██ The evidence as to this position does not meet the second of the steps formulated in *Jimenez Fuentes.* The district court erred in finding that political affiliation was an appropriate requirement for the effective performance of the duties of this position. Nor do we think that the Mayor is protected by the doctrine of qualified immunity. The actions taken by the Mayor as to this official are convincing evidence that the Mayor knew that Mendez was protected against arbitrary dismissal

under Puerto Rico law because he was a career employee. P.R.Laws Ann. tit. 3, § 1336 (1975). The Mayor fired him, then re-hired him, but only for the purpose of reclassifying him as a confidential employee so he could be fired again with impunity. Under these facts, the doctrine of qualified immunity was not implicated at all. As a career employee, Mendez was protected from an arbitrary discharge. The Mayor could not avoid the strictures of the law by reclassifying Mendez and then firing him. Since Mendez had a property interest in the position he held, his fifth amendment right to due process of law was violated as well as his first amendment right to belong to the political party of his choice.

## THE APPEAL BY DEFENDANTS FROM THE THIRTY JUDGMENTS IN FAVOR OF THE EMPLOYEES

The Mayor claims, *inter alia,* that neither the first amendment nor due process rights of the employees were clearly established at the time of their discharges, and he is, therefore, entitled to qualified immunity. This would, of course, insulate him from the damages part of the judgments. We think it appropriate, therefore, at the outset of this section of the opinion to reiterate the principles of qualified immunity that apply. In *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the Court established an objective test for determining whether a government official is entitled to qualified immunity: "We therefore hold that government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See also Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Hall v. Ochs,* 817 F.2d 920, 924 (1st Cir.1987). The question in political discharge cases is "whether it was clearly established that employees in the particular positions at issue, in light of the responsibilities inherent in those positions, were protected from patronage dismissal."

*Mendez–Palou v. Rohena–Bettancourt,* 813 F.2d at 1259. *See also Figueroa–Rodriguez v. Aquino,* 863 F.2d 1037, 1041 (1st Cir.1988); *Cheveras Pacheco v. Rivera Gonzalez,* 809 F.2d 125, 127 (1st Cir.1987).[4]

 A companion issue that runs through this appeal is whether the appellees were entitled to some sort of a due process hearing before their dismissal. The pertinent law is clear, a due process hearing is required only if there is a property interest in the position created by state law:

> Summary dismissal violates due process only if the employees "had a property right in continued employment." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Federal constitutional rights to due process are not implicated if the employees served at their employer's "will." *Laureano–Agosto v. Garcia–Caraballo,* 731 F.2d 101, 103 (1st Cir.1984); *Beitzell v. Jeffrey,* 643 F.2d 870, 874 (1st Cir.1981). A claim of entitlement to continued employment is "decided by reference to state law." *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). Under the Puerto Rico Public Service Personnel Act of 1975, Regional Directors hold positions of "trust and confidence," and as such they are subject to "free selection and removal."

*Raffucci Alvarado v. Sonia Zayas,* 816 F.2d 818, 821 (1st Cir.1987) (footnote omitted).

### The Two Other Confidential Employees

The district court held that the positions of Cleaning Supervisor, held by Alfredo Velasquez, and Internal Auditor, held by Donisio Perez–Perez, were protected by the *Elrod–Branti* rule and that the discharge of these two office holders violated their first amendment rights. Both positions were classified as confidential under the Puerto Rico Personnel Act.

### The Cleaning Supervisor

 Under the classification criteria, the official holding this position: "is responsible for directing, assigning the tasks performed by public clean-up gangs" and; that he/she "performs independently and under his/her own criteria in the performance of his/her tasks."

> The duties inherent in the office are: Directs, assigns and supervises municipal clean-up tasks. Assigns routes for clean-up truck drivers. Keeps records of distribution of work and attendance of drivers and laborers. Receives and handles complaints concerning public clean-up. Submits reports of work performed. Performs other related tasks.

The municipality job description states that the Sanitation Supervisor shall:

> supervise drivers and other cleaning employees; shall inform daily employee absences to the Personnel Officer; shall establish the route for the collection of garbage; shall ensure the maintenance of trucks; shall be responsible for any damage to the same and shall notify such malfunctions to the mechanic.

Velasquez testified that his main task was supervising garbage collection and that his supervisor was the Director of Public Works. He also testified that the hours he worked had been reduced by the prior Mayor. The defendant Mayor testified that he was in contact with the Cleaning Supervisor daily because of problems in disposing of solid waste. He did not, however, contradict Velasquez's testimony that the Cleaning Supervisor was subordinate to the Director of Public Works. Although we recognize that garbage collection is a vital municipal function, we can discern no opportunity for policymaking in the functions of this official. This is what distinguishes this position from that of First Deputy Commissioner of the Department of Water of the City of Chicago in *Tomczak v. City of Chicago,* 765 F.2d 633, on

---

**4.** As far as we can determine, no interlocutory appeal was taken on the question of qualified immunity.

which appellants rely. It would appear that any changes in policy relative to garbage collection came within the aegis of the Director of Public Works or the Mayor. We agree with the district court that political affiliation was not an appropriate requirement for the performance of the duties of this position.

But we are constrained to find that the Mayor should have been granted qualified immunity. The position was classified as confidential, which meant, under Puerto Rico law, that the holder of the job could be removed freely. According to his testimony, the Mayor was in contact with the Cleaning Supervisor on a daily basis. We do not think that at the time of the discharge of the Cleaning Supervisor it was clearly established that the holder of the position was protected by the first amendment.

Because he came under the confidential classification and could be discharged freely, this employee had no property interest in his job and hence no right to a due process hearing.

*The Internal Auditor*

This position presents a problem because defendants use the title Municipal Auditor while plaintiff, Dionisio Perez–Perez, insists that he was the Internal Auditor, an entirely different position. We note first that no Personnel Act classification job description and definition of duties was admitted into evidence.

The direct testimony of the plaintiff was to the following effect. He was appointed Municipal Auditor in 1968 under an NPP mayor. When the PDP took over the administration of Moca in 1972, he was dismissed. In 1976, the NPP regained power and plaintiff again became Municipal Auditor. In 1982, he was appointed Internal Auditor. The job description for Internal Auditor states that he/she

> carries out post-audits and inspections of all public funds operations; shall have access to the books, files, and documents of the directors of the administrative units; examines all accounts, records, books, contracts and budget; submits reports to the Mayor on the results of the

interventions; and advises officials and gives follow-up to all recommendations made by the comptroller of Puerto Rico in his auditing report.

Plaintiff explained the difference between a Municipal Auditor and Internal Auditor as follows. When there is no municipal finance department, the Municipal Auditor is in charge of the municipality's finances. He "check[s] everything that is related to the accounting of the municipality." An Internal Auditor does not come into existence, however, unless there is a Finance Department. The Finance Department does the work formerly done by the Municipal Auditor. The function of the Internal Auditor is to check and verify the work done by the Finance Department and everything related to the payroll and all fiscal matters of the municipality. The Internal Auditor is the fiscal agent of the municipal government. If the Internal Auditor finds anything wrong, he reports it to the Office of the Comptroller of Puerto Rico. If the Internal Auditor finds that the Finance Department has made an error, he must report the mistake to the Mayor and Director of Finance. He cannot correct the mistake himself, that is done by the Director of Finance. The Internal Auditor has no employees under him; his typewritten work is done by any employee available. The Finance Department is controlled by the Mayor.

It must be noted that during direct and cross-examination both attorneys referred to the position at times as that of Municipal Auditor. The district court also made the same characterization. It seems evident, however, that the position at issue is that of Internal Auditor.

This is a close question, but we are not disposed to second-guess the district court. Based on the testimony and job description, it could be reasonably found that the position of Internal Auditor is a non-political technical one. There are no policymaking decisions involved. Such decisions are in the hands of the Director of Finance, whom we held, in the preceding section, was properly a political appointee. The Internal Auditor's duties are those that

the title implies: he/she audits the financial records of the municipality and makes a *report to the Mayor and the Comptroller* of the Commonwealth. The Internal Auditor has no authority to correct mistakes, only to point them out. This is in sharp contrast to the duties of the Director of Internal Audit of the Puerto Rico Highway Department which we discussed in *Zayas–Rodriguez v. Hernandez*, 830 F.2d at 3. In *Zayas–Rodriguez*, the position carried with it high-level policy-making. That is not so here. The Internal Auditor of Moca is a technocrat, as the title implies, and nothing more.

■ We do find, however, that the doctrine of qualified immunity applied to the Mayor. There are several reasons for concluding that at the time of the discharge, first amendment protection for the holder of the position was not clearly established. First, there is a history of the in-and-out tenure of the office holder. Second, there was the confusion between the position of Internal Auditor and that of Municipal Auditor, which is clearly political. *See Guillermo Ocasio Carrasquilo v. Jose Rosa Berrios, individually and as Mayor of the Municipality of Maunabo*, Supreme Court of Puerto Rico No. R–84–356 (April 19, 1988), Translation Opinion at 19. The lawyers and the court at times melded the two positions into one. And last is the fact that the position was new to Moca, not having been established until 1982. Taking these factors into consideration it cannot be said that it was clearly established that the holder of the position was entitled to constitutional protection.

Since plaintiff did not prove that he had a property interest in this position, he was not entitled to a due process hearing prior to his dismissal.

*The Irregular Employees*

Twenty-three of the employees were characterized by stipulation of the parties as "transitory and/or irregular." These employees worked for the municipality as laborers and were paid on an hourly basis. They did not come within the classifications of the Puerto Rico Personnel Act and evidently were hired as needed on an *ad hoc* basis.

There are three issues as to these employees: whether they had a property interest in their jobs and were therefore entitled to a due process hearing; whether the Mayor was entitled to qualified immunity; and whether the district court erred in reinstating them and ordering them classified under the Puerto Rico Personnel Act as career or transitory employees.

■ The district court instructed the jury as follows. The personnel laws of Puerto Rico enacted in October of 1975 and June of 1980 "do not contemplate the existence of irregular employees." Despite this, it was the custom of Puerto Rico municipalities to hire irregular employees ("jornaleros") on an hourly rate basis. If the jury found that these employees had been working for the municipality on a regular basis, the municipality had the obligation to make them part of "regular government service." These employees were entitled to the protection of the Personnel Act and could be discharged only by following the regulations in effect. There were three conditions that had to be met before an employee in this category could be discharged: (1) an established lay-off plan had to be followed; (2) the seniority and efficiency of the employee had to be considered; and (3) thirty days notice had to be given before an employee could be laid off. The court emphasized that an employee in this category "could not be laid off if there was not a lay-off plan in effect."

There are two Puerto Rico cases directly on point. The one on which the district court relied is *Pizaro v. Municipality of Carolina and Hon. Roberto Iglesis*, No. R–79–152 (1982). *Pizaro* involved the discharge of seventy-seven irregular employees for economic and, in part, political reasons.

In the course of its opinion, the Puerto Rico Supreme Court reviewed and interpreted the Puerto Rico Personnel Act and made the following findings. Irregular employees are not recognized under the Personnel Act. The Act requires that all

municipal employees be classified as either career or confidential employees. There was, therefore, no justification for keeping the irregular employees classified as day laborers. The municipality should have established the career or transitory positions necessary to put these employees under the Act. The Personnel Act applies to these irregular employees; the only way it would *not* apply "would be to forcibly construe that they were independent contractors and not municipal employees," which is not so. Translation opinion at 6. The court then held that such employees had to have thirty days notice before dismissal and "could not be laid off without the required severance plan." *Id.* at 7. The court then went on to explain the basic requirements of such a plan. It stated:

> In spite of how justified some of the layoffs might have been from an economic standpoint, the public policy favoring the implementation of the merit system requires that it be clear that when one or more positions are to be eliminated, only those persons indicated, pursuant to the objective standards encased within the merit system, shall be either laid off or retained. It is equally important that all public employees have prior knowledge of the method to be used so they can adequately defend their rights which are relative to the rights of others.

*Id.* at 8. The court concluded by holding that the seventy-seven irregular employees were entitled to be reinstated and receive back pay. *Id.* at 9.

This case was followed by *Ramon Navedo v. Municipality of Barceloneta,* No. 0–82–228 (1982). Relying on *Pizaro* the court found that the dismissal of irregular employees for economic reasons without a removal plan was null and void and the employees were ordered "reinstated with all the benefits established in the Personnel Act." Translation opinion at 2.

Defendants rely on *Department of Natural Resources v. Enrique Correa,* No. CE–86–140 (1987). The question in *Correa* was "whether a public employee with a transitory appointment, has a legitimate interest to be retained in his job once the time of his appointment has expired." Translation opinion at 1. The court pointed out that, under the pertinent provisions of the Puerto Rico Personnel Act, a transitory employee is one who is appointed to a position of fixed duration, that the duration of the appointment is for the period of the position, and that transitory employees are not career employees. *Id.* at 3. The court held that,

> pursuant to the provisions of the Public Service Personnel Act, a transitory employee is not entitled to a permanent status nor does he have a legitimate job retention expectancy once his appointment expires. See, also, *Cheveras Pacheco v. Rivera Gonzalez,* No. 86–1428, slip op. [809 F.2d 125] (1st Cir., January 13, 1987).

*Id.* at 6.

It is clear from reading these three opinions that "irregular" employees are separate and distinct from "transitory" employees. Based on our review of the evidence, we find that, despite the characterization in the stipulation of these employees as "transitory and/or irregular" they were in fact "irregular," not "transitory," employees.

The district court's instructions to the jury were correct; they accurately mirrored the two Puerto Rico cases directly on point. The court's post-trial order that these twenty-three employees were to be reinstated and that the municipality had to convert them to either career or transitory employees in accord with the Personnel Act also follows the teaching of the Supreme Court of Puerto Rico and is affirmed. Because of our ruling that back pay is to be considered by the jury on the question of compensatory damages, the back pay part of the order cannot stand.

Defendants seem to argue that the reappointment order means that these employees cannot be discharged. This, of course, is not so. It means only that any discharge must be made pursuant to the provisions of the Personnel Act.

We think it evident, in light of the Puerto Rico Supreme Court opinions directly on point, that it was clearly established

at the time the Mayor discharged the irregular employees that they were entitled to the protection of the Puerto Rico Personnel Act and that a mayor of a Puerto Rico municipality should have known it. The Mayor, therefore, was not entitled to the protection of qualified immunity.

 Defendants have suggested that the rule announced in *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) prohibiting a federal court from awarding injunctive relief against state officials on the basis of state law, proscribes the court's reinstatement order. We do not think that *Pennhurst* applies. First, this is not an action against state officials. Secondly, the basis of this action is not state law but alleged violations of the first and fifth amendments to the federal constitution. The reinstatement order was remedial relief to which plaintiffs were entitled because their federal constitutional rights had been violated. It was incumbent on the district court in fashioning its reinstatement order to follow the law which applied to these employees as interpreted by the highest court of the Commonwealth.

Since these plaintiffs had a property interest in their jobs under state law, it follows that their fifth amendment right to some sort of a due process hearing before discharge was violated.

*The Septuagenarian Employees*

 Two of the employees were over seventy. Carlos Cordero del Pilar was seventy-seven at the time of trial. He started working for the municipality in 1969 as a janitor. After working for four years he was dismissed when a mayor affiliated with the PDP was elected. He was reinstated in 1977 as a result of a judgment by the Supreme Court of Puerto Rico. The defendant Mayor discharged Cordero on February 15, 1985. Modesto Hernandez Morales was seventy-two at the time of trial. He had a permanent position as a school bus driver and had held that job since January 13, 1970.

The court correctly instructed the jury that these employees were career employees under the Puerto Rico Personnel Act.

P.R.Laws Ann. tit. 3 § 1349 (1975) provides: "there shall be two categories of employees; career employees and confidential employees." Section 1352 of the Act states: "all employees not included in section 1250 of this title [defining confidential employees] shall be career employees."

Defendants do not seriously dispute the applicability of the Personnel Act but claim that the municipality had an ordinance in effect prior to the incumbency of the defendant Mayor which compelled the retirement of municipal employees at the age of seventy. The ordinance was read by the judge but does not seem to have been admitted in evidence.

Plaintiffs position is that the ordinance mandated that municipal personnel could not be terminated for reason of age unless a retirement plan existed, and Moca had no retirement plan.

As already pointed out, defendants have not challenged the evidentiary basis for the jury's findings that the discharges were for political reasons. Since these employees had a property interest in their positions, their right to a due process hearing before termination was violated.

The question of qualified immunity poses no problem. At the time of the discharges, the employees had, by virtue of the Personnel Act, a clearly established property right in their positions, and this is one of the things a municipal mayor must be expected to know.

*The Contract Employees*

 There were three contract employees; Adabel Marquez, Birma Velazquez, and Alejandro Maisonave.

Marquez worked under a contract with the municipality as a typist. Her latest contract ran from January 1, 1985 to June 30, 1985. She was discharged on March 15, 1985.

Velazquez was working at the Senior Citizen's Center as an aide when she was terminated on March 15, 1985. Although the evidence is not entirely clear, it would appear that, unlike Marquez, her contract term had expired before she was dis-

charged and that she continued to work on a week-to-week basis.

Maisonave was also discharged on March 15, 1985. He was employed as a janitor under a series of letter contracts starting September 30, 1982. The last one is dated July 2, 1984. As with the prior employee, it would appear that Maisonave was not under contract when he was discharged.

The Personnel Act does not specifically refer to "contract employees" nor have we found any Puerto Rico case focusing on this type of employee. The closest analogy is that of a "transitory" employee who, as in the case of a "contract" employee, has a fixed employment term. It would follow then that a "contract" employee has a job retention expectancy only during the term of the contract and is not entitled to permanent status. *See Correa, supra*, Translation opinion at 3. These employees, therefore, had no right to a due process hearing.

This does not mean, however, that the contract employees could be discharged in violation of their first amendment right to free political speech and association. In *Perry v. Sinderman*, 408 U.S. 593, 597–98, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972), the Court held:

> [T]he respondent's lack of a contractual or tenure "right" to re-employment for the 1969–1970 academic year is immaterial to his free speech claim. Indeed, twice before, this Court has specifically held that the nonrenewal of a nontenured public school teacher's one-year contract may not be predicated on his exercise of First and Fourteenth Amendment rights. *Shelton v. Tucker, supra* [364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960)]; *Keyishian v. Board of Regents, supra* [385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967)]. We reaffirm those holdings here.

This principle was reiterated in *Branti v. Finkel*, 445 U.S. at 512 n. 6, 100 S.Ct. at 1291 n. 6: "After *Elrod*, it is clear that the lack of a reasonable expectation of continued employment is not sufficient to justify a dismissal based solely on an employee's private political beliefs." (Citing *Elrod v. Burns*, 427 U.S. at 360 n. 13, 96 S.Ct. at

2683 n. 13.) *See also Ivette Santiago–Negron v. Castro–Davila*, 865 F.2d at 436 (1st Cir.); *Cheveras Pacheco v. Rivera Gonzalez*, 809 F.2d 125, 127–28 (1st Cir.1987). These three employees were, therefore, wrongfully discharged and their reinstatement was proper.

## IV.

### THE CONTEMPT APPEAL

The Mayor appeals the orders finding him in contempt. Appellant had argued in his brief that the contempt proceedings "came to be criminal, rather than civil in nature" and "lacked the constitutionally required procedural safeguards." This contention was abandoned after the decision by the United States Supreme Court in *Hicks v. Feiock*, — U.S. —, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988) which discussed in depth and in detail the difference between civil and criminal contempt. Counsel have correctly read the handwriting on the wall, and we thank them for lightening our load. This, then, is an appeal from a finding of civil contempt.

■ The basic facts are not in dispute and need not be recited in detail. After a series of hearings, the Mayor was held in contempt for not complying with the reinstatement and back pay order relative to the twenty-three "irregular" employees. After the last hearing, the Mayor was incarcerated for failing to implement the back pay order. He was released three days later when a check for the back pay amount was deposited with the clerk of court.

Since the contempt order has been complied with, no case or controversy remains, and the appeal must be dismissed. *In re Cordova Gonzalez*, 726 F.2d 16, 21 (1st Cir.), *cert. denied*, 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984). *See also Thomassen v. United States*, 835 F.2d 727, 731 (9th Cir.1987); *United States v. Griffin*, 816 F.2d 1, 7 n. 4 (D.C.Cir.1981); *In re Campbell*, 628 F.2d 1260, 1261 (9th Cir. 1980) (collecting cases).

■ We also note that good faith is not a defense to civil contempt. *Donovan v.*

*Enterprise Foundry, Inc.*, 751 F.2d 30, 38 (1st Cir.1984).

Because the law is clear that the appeal is moot, the "collateral consequences" argument of the Mayor cannot be considered. The contempt appeal is dismissed.

## V.

## ATTORNEY'S FEES

 Because the changed posture of the case requires a remand, the appeal from the award of attorney's fees is premature and is dismissed. The question of attorney's fees should be considered *de novo* by the district court after the trial on damages.

## VI.

## SUMMARY

1. The jury instruction on causation did not constitute plain error.

2. The post-verdict award of back pay was error. There must be a new trial on damages.

3. We affirm the district court's finding that the municipality was liable as a matter of law.

4. The district court's granting of judgments n.o.v. against five employees is upheld; it is reversed as to Vincente Mendez Arocho, the Assistant Director of Public Works.

5. The district court's rulings and findings as to the Cleaning Supervisor and Internal Auditor are affirmed, except that we rule that the doctrine of qualified immunity applies to the Mayor and that neither employee had a right to a due process hearing before termination.

6. The district court's post-trial reinstatement of the twenty-three irregular employees is affirmed. These employees had a right to a due process hearing before termination.

7. The two septuagenarian employees had a right to a due process hearing before their termination.

8. The contract employees had no right to a due process hearing before termination, but since they could not be fired for purely political reasons, the district court's reinstatement of the contract employees is affirmed.

9. It is not clear whether the reinstated employees have actually received the back pay ordered or whether it is on deposit in the clerk's office. If it has been paid over to the employees, then at the trial following remand, the judge shall deduct the amount paid over from any award of compensatory damages in favor of a plaintiff who has received back pay; and, if the award is less than the amount paid over, shall order the affected employee to make restitution of the deficiency.

10. The contempt appeal and the appeal from the award of attorney's fees are dismissed.

Affirmed in part, Reversed in part. Remanded.

Neither party is awarded costs on appeal.