Jose ZAYAS–RODRIGUEZ, et al.,
Plaintiffs, Appellees,

v.

Dario HERNANDEZ, etc., et al.,
Defendants, Appellants.

No. 86–1982.

United States Court of Appeals,
First Circuit.

Submitted May 8, 1987.

Decided Sept. 29, 1987.

Marcos A. Ramirez Irrizarry, Hector Rivera Cruz, Secretary of Justice, and Ramirez & Ramirez, Hato Rey, P.R., on brief, for defendants, appellants.

Miguel Pagan, Eliezer Aldarondo Ortiz and Aldarondo & Lopez Bras, Hato Rey, P.R., on brief, for plaintiffs, appellees.

Before BOWNES, BREYER and TORRUELLA, Circuit Judges.

BREYER, Circuit Judge.

This appeal arises out of "political discharge" suits by eight former officials of the Puerto Rico Highway Authority who, following the election of a new governor in 1984, were dismissed by the new head of the Authority (PRHA). They claim their dismissals violated the federal constitution. *See Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) and *Elrod*

**2**

*v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (finding, with certain exceptions, that firing a government employee because of political affiliation violates the First Amendment). They seek damages as well as injunctive relief. The defendants asked the district court to find them immune from liability for damages. *See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (establishing "qualified immunity" from damages for public officials acting in their official capacities). The district court denied their motion for summary judgment on the question of "qualified immunity," and the defendants have brought this interlocutory appeal—an appeal limited *solely* to the claim for damages. *See Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (authorizing interlocutory appeals of denials of summary judgment on qualified immunity).

We have discussed the legal issues in this case fully in *Mendez-Palou v. Rohena-Betancourt,* 813 F.2d 1255 (1st Cir.1987) and *Juarbe-Angueira v. Arias,* 831 F.2d 11 (1st Cir.1987), which cases are fully applicable here. As in *Juarbe-Angueira,* the plaintiffs do not quarrel with the underlying facts about the nature of their positions as set forth in the relevant statutes, the organizational chart, and the classification questionnaire used by Puerto Rico's Central Office of Personnel Administration in determining whether to exempt the position from the cover of civil service. For reasons set out in *Mendez-Palou* and *Juarbe-Angueira,* to decide the "qualified immunity" issue we need only determine whether the plaintiffs' positions "potentially" concerned matters of partisan political interest and involved a "modicum" of policy-making responsibility, access to confidential information, or official communication. We conclude that all eight of these positions meet this standard, and that defendants are entitled to qualified immunity.

The agency at issue, the PRHA, considers matters, and makes decisions that involve matters, about which there is room for political disagreement. The Authority submits to the legislature "a master [high-

way] development plan" each year, it is responsible for "the determination of site location, and establishment of ... points of ingress and egress," it controls expenditures and deals with the federal government in respect to highway grants and loans. Highway siting, maintenance, and the determination of access points all are matters that can easily become highly controversial among different groups, parties, and geographical areas. The positions at issue, which appellants describe as the Executive Director's "cabinet," are the kind of high-level, policy-making government positions that we have found normally permit a defendant in a case of this type to invoke "qualified immunity" from liability for damages. *See Mendez-Palou v. Rohena-Betancourt, supra; Juarbe-Angueira v. Arias, supra,* and cases there cited.

The Puerto Rico Highway Authority is divided into five major areas: Design, Construction, Plans, Administration, and the separate Toll Facilities Administration. The positions formerly held by plaintiffs Ramirez Velez, Enriquez Aponte, Ramos Cruz, and Ferrer Aponte are the top positions in four of these five areas (Design, Construction, Plans, and Toll Facilities, respectively). The Director of Design, in charge of highway design, supervises employees of the various design offices, recommends the acceptance or rejection of project bids, coordinates with other public agencies in respect to highway design matters, represents the Secretary and Executive Director at various public meetings, and so forth. The Director of Construction directs highway construction, deals with construction contractors, recommends acceptance or rejection of requests for time extensions and other contract modifications, and supervises all construction work done. The Plans Director oversees six offices that plan the expenditure of about $60 million for highway construction. Along with the Executive Director, the Transportation Secretary, and the Assistant Transportation Secretary, he helps set priorities for allocating these funds among different highway projects. The Toll Facilities Director supervises the planning, coordina-

tion, and operation of Puerto Rico's toll roads and buildings. He advises the Executive Director on all matters related to toll facilities. The level of responsibility of these officials, the general supervisory and policy-making nature of the jobs, and the subject matter (planning, designing, building and caring for toll roads and other highways) lead us to conclude that the positions both involved policy-making responsibility, and *"potentially"* involved matters of political concern.

Two other positions, Director of Personnel (formerly plaintiff Zayas Rodriguez), and Director of Internal Audit (formerly plaintiff Nieves Maldonado), had agency-wide responsibilities. The Director of Personnel would "[p]lan, direct, administer, coordinate, and supervise all ... personnel program[ ]" activities including "[c]lassification ... [r]ecruitment ... [and] [a]ppointments." He would "advise the Executive Director, the Secretary of Transportation ... and other officers of the Agency" on personnel matters, "represent the Executive Director in official activities," and make budget recommendations for his own area. (Quotations are from the classification questionnaire.)

■ The first of these positions falls quite clearly within the 'political/policy' category as set forth in *Mendez-Palou.* The second position poses a more difficult question because the job title "Auditor" suggests a non-political, technical function. *Cf. De Choudens v. Government Development Bank,* 801 F.2d 5 (1st Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1886, 95 L.Ed.2d 494 (1987). The job description points out, however, that the Internal Auditor is involved in high-level policy making in that he "counsels the Executive Director" about the rules and regulations of the Federal Highway Authority, of the federal government, and of other Commonwealth agencies, and about the likely impact of such rules upon actual, or possible future, policies that the Director has under consideration—a function that potentially concerns the interaction between general policy goals and detailed policies that must be consistent with federal rules. The Audi-

tor also both supervises auditors and establishes "general rules to follow in the audits for the consultants." Given the position's high level (the organizational chart shows it among the agency's top five), the policy-making nature of the job, and the relationship between the advice likely given and agency policies, we believe the job *"potentially"* involves matters of highway policy that could be political in nature and it involves more than a "modicum" of policy-making responsibility.

■ The final two positions, those held by plaintiffs Vega Perez and Nazario Miranda, involve staff, rather than line, responsibilities. Vega Perez was the Executive Director's Administrative Assistant. He would help the Executive Director plan and coordinate; he would follow up the Executive Director's orders to see that they were carried out; he would evaluate reports sent up to the Executive Director from within the organization; he would draft letters, memoranda, and other documents for the Executive Director's signature; he would represent the Executive Director at various meetings. Nazario Miranda was Technical Assistant to the Executive Director. He would analyze technical reports flowing up to the Executive Director; he would look into technical problems for the Executive Director; he would "take care of citizen complaints;" he would follow up on various projects with deadlines, seeking to solve problems that threatened their timely completion. Given the immediate staff relationship between these two special assistants and the PRHA Executive Director, as well as the policy-related nature of their work, we conclude that the work "potentially" involved matters about which there was room for political disagreement.

Though we cannot say from the job descriptions how much these top jobs have involved "policy-making responsibility," the jobs did involve at least a "modicum" of access to confidential information or official communication. Thus, under the standards set forth in *Mendez-Palou* and *Juarbe-Angueira,* the defendants are entitled to qualified immunity in respect to the

**4**

plaintiffs' claims for damages. We express no view about claims for reinstatement as these claims are not before us. The judgments of the district court in respect to the issue of qualified immunity are

*Reversed.*

TORRUELLA, Circuit Judge (concurring in part; dissenting in part).

I join the majority's conclusion that the position of Special Assistant II to the Executive Director of the Puerto Rico Highway Authority ("PRHA") requires political affiliation for its effective performance. *Branti v. Finkel*, 445 U.S. 507, 518, 100 S.Ct. 1287, 1295, 63 L.Ed.2d 574 (1980). It appears from the uncontested job description that this employee works closely with the Executive Director, advises him directly on *administrative* matters, and personally implements the Executive Director's orders.

I disagree with the rest of the opinion, however. The remaining plaintiffs, regardless of their official characterization as policymakers or trust employees, are technocrats whose work is related to non-political matters such as highway design, construction, maintenance, management, accounting, and labor relations within the PRHA. For example, while the position of Technical Aide entails accessibility and accountability to the Executive Director, its duties concern mostly specialized and professional matters such as giving advice on engineering issues, reviewing agency regulations and procedures, and handling the Director's technical assignments. If this court were to be faithful to *de Choudens* and *Branti*, that position and the others would be treated as non-political.

The district court reasonably could have found, from the uncontested job descriptions, that partisan politics have no bearing 1) on the design and inspection of highways (Director of the Design Area); 2) on how work is subcontracted or how the operational and administrative phases of construction are carried out (Director of the Construction Area); 3) on the coordination of "technical services" and administration of properties within the agency (Director of the Plans Area); and 4) on how toll facilities are administered (Director of Toll Facilities). I also find it incomprehensible why the Internal Auditor, who spends most of his time advising higher-ups regarding purely technical and economic matters, requires political affiliation, unless *de Choudens* and *Branti* have been overruled *sub silentio*. And the Personnel Director as well, responsible for planning, supervising and coordinating employee programs, recruiting personnel, and advising the Director in relation to labor and employment laws, should be treated as non-political. Unless political patronage is still the law of the land, I cannot see how the decision to hire, train, and discipline a public employee should depend on the personnel manager's party affiliation.

For the reasons stated in *Juarbe-Angueira v. Arias*, 831 F.2d 11 (1st Cir.1987) (dissenting) the law was clearly established against the firings that have taken place here.

I therefore dissent.