Jose A. HERNANDEZ–TIRADO, et al.,
Plaintiffs, Appellees,

v.

Mariano ARTAU, etc.,
Defendant, Appellant.

No. 87–1346.

United States Court of Appeals,
First Circuit.

Submitted Nov. 6, 1987.

Decided Dec. 16, 1987.

Norma Cotti Cruz, Deputy Sol. Gen., Rafael Ortiz Carrion, Sol. Gen., and Reina Colon De Rodriguez, Asst. Sol. Gen., Dept. of Justice, on brief for defendant, appellant.

Miguel Gimenez Munoz, San Juan, P.R., on brief for plaintiffs, appellees.

Before CAMPBELL, Chief Judge,
BREYER and TORRUELLA, Circuit
Judges.

BREYER, Circuit Judge.

On September 1, 1985, Mariano Artau, Administrator of the Puerto Rico Horse Racing Sport Administration (also translated as the Horseback Riding Sport Administration), demoted Jose Hernandez Tirado from his position as Director of the Vocational Racing School. Hernandez Tirado, claiming that he had been removed from his job because of his political party affiliation, brought a political discharge suit against Artau. His is one of many such suits that demoted or dismissed employees have brought against new agency chiefs who took office after their political party won the 1984 elections. *See, e.g., Nunez v. Izquierdo–Mora*, 834 F.2d 19 (1st Cir.1987); *Juarbe–Angueira v. Arias*, 831 F.2d 11 (1st Cir.1987); *Zayas–Rodriguez v. Hernandez*, 830 F.2d 1 (1st Cir.1987); *Mendez–Palou v. Rohena–Betancourt*, 813 F.2d 1255 (1st Cir.1987); *Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236 (1st Cir. 1986), *cert. denied,* — U.S. —, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987). In this case, as in many others, the defendant official claimed a "qualified immunity" from liability for damages and moved for summary judgment on that ground. *See Anderson v. Creighton,* — U.S. —, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed. 2d 396 (1982). The district court denied the motion and defendant here appeals. *See Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

We have discussed the relevant legal standards at length in previous opinions. *See, e.g., Juarbe–Angueira, supra; Roman Melendez v. Inclan*, 826 F.2d 130 (1st Cir.1987); *Mendez–Palou, supra; Jimenez Fuentes, supra;* and cases cited there, for discussion. In *Juarbe–Angueira*, after reviewing prior cases, we wrote the following statement, which is fully applicable here.

> The upshot is that defendants will normally enjoy qualified immunity from damage liability in upper-level, managerial-type job dismissal cases, cases where

the jobs in question are not purely technical or scientific in nature. This court said in *Mendez–Palou* that a defendant enjoys "qualified immunity" as long as the job in question *"potentially* concerned matters of partisan political interest and involved at least a *modicum* of policymaking responsibility, access to confidential information, *or* official communication." *Mendez–Palou,* 813 F.2d at 1259 (emphasis added). This legal standard governs the case before us.

*Juarbe–Angueira,* 831 F.2d at 14.

Applying this standard to the present case, we conclude that the district court's decision to deny the defendant summary judgment in respect to qualified immunity was legally correct. For the purposes of this appeal, the duties of the Director of the Vocational Racing School, as described in the job classification questionnaire, are not in dispute. *See Roman Melendez, supra* (using job classification questionnaire as description of undisputed job duties); *Juarbe–Angueira, supra* (same); *Zayas–Rodriguez, supra* (same). That description (*see* Appendix) indicates that the job is purely technical in nature. The School's objective, as suggested by the questionnaire, is to teach horseback riding. The Director prepares teaching materials; organizes the teaching program; evaluates instructors and instruction; oversees admissions; establishes graduation requirements; supervises the care, training, and use of horses; acts as a liaison with other parts of the government "in matters related to the School;" recommends future school projects; and "cooperates," "consults with," and "performs any other duty" for the Administrator of the Horse Racing Sport. We see nothing in the duties of a director of a horseback riding school that, even "potentially," concerns "matters of partisan political interest."

Moreover, in our view, the conclusion ought to have been apparent to the Horse Racing Sport Administrator in October, 1985, when he demoted the plaintiff. In *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the Supreme Court distinguished between policymaking positions related to "partisan political interests [or concerns]," subject to politically-based discharge, and policymaking positions unrelated in any way to politics. *Id.* at 519, 100 S.Ct. at 1295. The court discussed the job of a state university football coach as an example of the latter, a policymaking position, but one not subject to discharge. The Court said that "[t]he coach of a state university's football team formulates policy, but no one could seriously claim that Republicans make better coaches than Democrats, or vice versa, no matter which party is in control of the state government." *Id.* at 518, 100 S.Ct. at 1295; *see also Jimenez Fuentes,* 807 F.2d at 240. We can find no significant difference between the Racing School Director in the case before us, and the football coach in the Supreme Court's example.

The appellant argues that the Horse Racing Sport Administration deals with the regulation of racetracks, betting, and similar matters that may be highly political. He does not explain, however, how the plaintiff's job has anything to do with the political aspects of the agency's work.

The appellant also notes that the plaintiff sometimes acts as a "liaison," and he points to the last three duties of the Director listed in the job description, namely:

(1) [t]o cooperate with the Administrator at his request, not only in the teaching field within the [h]orseback [r]iding [s]port, but also in everything in which his knowledge, background and experience could be required and/or needed to assure that the [h]orseback [r]iding sport be maintain[ed] in a strong, progressive and high level of competence, clean and deserving of the public support;

(2) [t]o consult with the Administrator of the Horseback Riding Sport [about] everything related to the Horseback Riding Vocational School; and

(3) [t]o perform any other duty, by express assignment from the Administrator of the Horseback Riding Sport that [may] be assigned, as well as any other duty related to his position.

These functions are described in highly general terms. But, in context, they do not suggest that the plaintiff is involved in anything more than purely technical work. Of course, the appellant remains free to introduce other evidence on the point, in an effort to show there is more here than meets the eye. But, if plaintiff's job is more than merely technical, if it might significantly touch upon more politically sensitive areas of the agency's work, the present record does not show it.

The district court's denial of the defendant's motion for summary judgment is therefore

*Affirmed.*

### *Appendix*

Duties of the Director of the Vocational Racing School, of the Puerto Rican Horse Racing Sport Administration, as recorded on the Classification Questionnaire, COPA–16, of the Commonwealth of Puerto Rico Personnel Office:

1. [To] prepare the didactic material to be used in the teaching of the different subjects.
2. To organize seminars for the information, guidance and training of the School personnel.
3. To procure the assessment deemed necessary to guarantee that the instruction to be offered be that of the best of quality.
4. To supervise and rate the work of the School [p]ersonnel.
5. To see to the compliance of the Rules and Regulations now in force and to apply the necessary sanctions.
6. To establish admission requirements for the different courses, along with the instructors.
7. To participate in the preselection of candidates for admission, prior evaluation of candidates in accordance to the above [sic].
8. To be a part of the Examining Committees, along with the instructors of each course.
9. To establish graduation requirements and recommendation therefor.
10. To serve [as] a lia[is]on between the Office of the Administrator and the other Departments, Agencies and Instrumentalities of the Government in matters related to the School, its workings, its courses and projections.
11. To supervise the care, training and use of the School's horses in order to protect their health and conditions and to obtain maximum benefits therefrom.
12. To recommend future projections for the School in order to assure an uninterrupted functioning for the benefit and progress of the [h]orseback riding sport.
13. To cooperate with the Administrator at his request, not only in the teaching field within the [h]orseback [r]iding [s]port, but also in everything in which his knowledge, background and experience could be required and/or needed to assure that the [h]orseback [r]iding sport be maintain[ed] in a strong, progressive and high level of competence, clean and deserving of the public support.
14. To consult with the Administrator of the Horseback Riding Sport [about] everything related to the Horseback Riding Vocational School.
15. To perform any other duty, by express assignment from the Administrator of the Horseback Riding Sport that [may] be assigned, as well as any other duty related to his position.