**Peter DURIEX–GAUTHIER, Plaintiff,**

v.

**Carlos LOPEZ–NIEVES, his wife Jane Doe, and the conjugal partnership constituted by them, Defendants.**

No. Civ. 99–1298CCC.

United States District Court,
D. Puerto Rico.

March 20, 2001.

Iván Díaz–López, San Juan, PR, for plaintiff.

Angel E. Rotger–Sabat, Attorney General, Department of Justice of the Commonwealth of P.R., Federal Litigation Division, San Juan, PR by José R. Cintrón–Rodríguez, for defendants.

## ORDER

CEREZO, District Judge.

Plaintiff, Peter Duriex–Gauthier (Duriex–Gauthier), brought this civil rights action to redress alleged violations to his rights under the First and Fourteenth Amendments to the U.S. Constitution. He claims that he was summarily dismissed from his position as Personnel and General Services Official[1] of the Office of the Ombudsman of the Commonwealth of Puerto Rico by its director, defendant Carlos López–Nieves, solely because of his political affiliation to the Popular Democratic Party. Pending before the Court are the Motion for Summary Judgment filed by defendants Carlos López–Nieves, his wife and their conjugal partnership (**docket entry 17**), the Opposition and Cross Motion for Partial Summary Judgment filed by plaintiff (**docket entry 31**) together with a brief in support (**docket entry 33**), and defendant Lopez–Nieves' Opposition to the Cross–Motion for Summary Judgment (**docket entry 37**).

Defendants allege that plaintiff has failed to state claims under the First Amendment for political discrimination or under the Fourteenth Amendment for due process violation, posit that they are enti-

---

1. Although plaintiff, in his complaint, identified the position formerly occupied by him as that of "Human Resources and General Services Official", *see* docket entry 1. p. 2, ¶ 4, the documents submitted by the parties in support of their cross-motions for summary judgment refer to it as "Personnel and General Services Official". We will refer to it using the latter title.

tled to qualified immunity on the damages' claim based on the alleged First Amendment violation, and aver that the monetary damages sought are barred by the Eleventh Amendment. Their argument in support of the dismissal of the First Amendment claim is summarized in the following statement:

> Even viewing the alleged facts in the light most favorable to plaintiff and assuming for the sake of the argument that he was dismissed for reasons of his alleged political affiliation, co-defendants are entitled to summary judgment as a matter of law for the following reasons: a) the Ombudsman's Office is statutorily exempted from the application of the Puerto Rico Personnel Law for the Civil Service; therefore, the "merit principle"—which underlies the Puerto Rico Personnel Law for the Civil Service, does not bind the Office of the Ombudsman; b) the Ombudsman's personnel regulations specifically provides that all employees of the Office of the Ombudsman are of confidential nature and, as such, can be freely recruited and dismissed; c) plaintiff agreed that all the appointments and posts he occupied at the Ombudsman's Office were of trust, as specified in the employment agreements; d) plaintiff's employment status at the Ombudsman's was "at will" and thus subject to the terms and conditions of every and each employment contract that he indeed agreed to; e) plaintiff was fully aware of his "at will" status, and therefore cannot claim a violation of his First and Fourteenth Amendment rights.
>
> Even construing the alleged facts in the light most favorable to the plaintiff and solely assuming for the sake of the argument that he was separated from his employment because of his alleged political affiliation, the evidence here would show that plaintiff's separation from the last confidential post he was holding was legitimate, and responded to the Ombudsman's legitimate interest and prerogative to appoint a person in a highly confidential position, pursuant to the Ombudsman's Organic Law, Law No. 134 of June 30, 1977, as amended, and the Personnel Regulations of the Office of the Ombudsman, Regulation No. 86–3 of September 22, 1986.

Motion for Summary Judgment, docket entry 17, pp. 3–4.

■ It is evident that defendants attempt to validate the dismissal of plaintiff for political motives by relying almost exclusively on the purported "confidential" classification of his position. However, the First Amendment protects public employees from being dismissed for their political affiliation, except if they held a position for which party affiliation constituted an appropriate qualification for continued employment. *Branti v. Finkel,* 445 U.S. 507, 518, 100 S.Ct. 1287, 1294–95, 63 L.Ed.2d 574 (1980). Whether plaintiff indeed held a "political" position must be determined by the application of a two-pronged test developed by the Court of Appeals in *Jiménéz Fuentes v. Torres Gaztambide,* 807 F.2d 236, 241–42 (1st Cir.1986). First, "we inquire whether the overall *functions* of the employee's department or agency involve decision making on issues where there is room for political disagreement on goals or their implementation." *O'Connor v. Steeves,* 994 F.2d 905, 910 (1st Cir.1993) (*quoting Jiménez Fuentes, supra* ). (Emphasis in original.) Second, "we decide whether the *particular responsibilities* of the plaintiff's position, within the department or agency, resemble those of a policymaker, privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement for continued tenure." *Id.* Relevant fac-

tors in applying this second prong are "relative pay, technical competence, power to control others, authority to speak in the name of policymakers, public perception, influence on programs, contact with elected officials, and responsiveness to partisan politics and political leaders." *Id.*

■ We thus apply the *Jiménez Fuentes* test. With regard to its first prong, defendants allege that "[t]he Office of the Ombudsman's role certainly requires involvement on public matters that require decision-making on issues where there is room for political disagreements and dissensions...." *See* Defendants' Motion for Summary Judgment, **docket entry 17**, p. 16; *see also id.*, at p. 5, note 2, while plaintiff has utterly failed to argue the matter in his response. Thus, we deemed it conceded, and find the first prong satisfied.

■■ As to the second prong, and in view of defendants' argument cited *infra* at page 2, we pause to clarify that "[w]hether a government position is 'political' does not depend upon such loose-fitting labels as 'confidential' or 'policymaking', but on the *substance of the duties inherent in the position itself.*" *Ortiz–Piñero v. Rivera–Arroyo*, 84 F.3d 7 (1st Cir.1996) (emphasis in original). It should be stressed that we "look only to the duties inherent to the position and [are] not to consider the actual functions of either past or present officeholders." *Roldán–Plumey v. Cerezo–Suárez*, 115 F.3d 58, 62 (1st Cir.1997). Hence, although the parties seem to dispute the functions actually performed by plaintiff while he occupied the position at issue, we will focus our attention on the official job description prepared by the Puerto Rico Central Office of Personnel Administration, COPA–16, for "the job description [is] the best, and sometimes dispositive, source for de-

termining the position's inherent functions." *Id.*

The COPA–16, Exhibit 8 to defendants' motion (**docket entry 17**) and Exhibit A to plaintiff's motion (**docket entry 31**), describes the duties of the position as follows:

> This is a technical and administrative job of great complexity and responsibility in the field of personnel administration comprising the performance of a series of tasks with a large variety. The employee would receive general and specific instructions on the work to be performed. The employee shall work with great technical independence responding directly to the Deputy Ombudsman of the office as to the conformity of its job with the rules set forth.
>
> Shall perform the following duties:
>
> Shall be responsible for the planning and supervision of all the personnel activities including the classification and compensation aspects of the positions, training, transactions, leaves, payrolls, personnel relations and similar aspects in the personnel administration field.
>
> Shall interpret and apply the laws and regulations governing personnel administration.
>
> Shall analyze the problems of organization and procedures.
>
> Shall plan, assign and organize the work of the personnel unit.
>
> Shall act as the liaison officer between the Office and COPA.
>
> Shall perform other jobs similar to this.

At the outset, we note that the position does not require its office holder to engage in policymaking decisions, as he is instead commanded to follow instructions imparted by others. Although he is assigned to plan, supervise and coordinate employee programs, even these tasks had to be done in conformity with rules al-

ready established by his higher-up, the Deputy Ombudsman, and presumably the Ombudsman. He was not charged with establishing the personnel practices and/or policies of the Office of the Ombudsman. In fact, the job description emphasizes that he only had *technical* independence. He lacked hiring, promoting, demoting, transferring or firing authority. He did not make recommendations on the budget. In addition, he had no authority to speak on behalf of the policymakers of the agency, and no contact whatsoever with elected officials. In essence, the duties of the Personnel and General Services Official are those of a typical technocrat.

Although the Court of Appeals had previously found positions with a similar title to be "political", a review of those cases reveal that those positions had duties that clearly placed them in the category of policymakers exempted from the protections of the First Amendment. In *Cordero v. De Jesus–Méndez,* 867 F.2d 1, 11–12 (1st Cir.1989), for example, the Court found the position of Personnel Director of the Municipality of Moca to be political. Its job description established, however, that the office holder *"possesses ample liberty to make necessary decisions* within the area of his/her position and *utilizes his/her own judgment and criteria to a great extent in the performance of his/her duties." Id.,* at p. 11 (emphasis ours). In addition, it required the office holder to directly advise and orient the Mayor, an elected official, on the implementation of policy related to personnel. It also charged him with providing information to the public and employees on employment opportunities and to serve as liaison between the municipality and private enterprise regarding employment, functions which effectively authorized him to speak on behalf of the Municipality. Hence, said

position is clearly distinguishable from the one before us.

The same happens with the position of Director of Personnel of the Puerto Rico Highway Authority, which the Court of Appeals scrutinized in *Zayas–Rodríguez v. Hernández,* 830 F.2d 1 (1st Cir.1987), in order to determine the applicability of the qualified immunity defense. In concluding that the position was "political" under the more lenient standards applicable to qualified immunity requests,[2] the Court noted that among the duties of said position were to " '*advise* the Executive Director, the Secretary of Transportation … and other officers of the Agency' on personnel matters, '*represent* the Executive Director in official activities,' and *make budget recommendations* for his own area." *Id.,* at p. 3 (emphasis ours). None of these duties were performed by the Personnel and General Services Official of the Office of the Ombudsman.

Accordingly, we find as a matter of law that the position of Personnel and General Services Official of the Office of the Ombudsman is not one for which party affiliation is an appropriate requirement. As a result, defendants' request for dismissal of plaintiff's First Amendment claim, which was founded on the position being "political", is hereby DENIED.

■ Similarly, defendants' request for dismissal of plaintiff's Fourteenth Amendment claim is also DENIED, inasmuch as there are genuine issues as to material facts on whether plaintiff's position was considered to be one of "trust" or "career", which is crucial in determining whether he had a legitimate expectation of continued employment which gave rise to a property right entitled to the due process protection. *See Cleveland Bd. Of Educ. v. Loud-*

---

**2.** *See infra.,* at 316–17.

*ermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

Defendants have also averred that they are entitled to qualified immunity on the First Amendment claim. "In the context of political discrimination charges, a defendant enjoys qualified immunity as long as the job in question *potentially* concerned matters of partisan political interest and involved at least a *modicum* of policymaking responsibility, access to confidential information, or official communication." *Roldán–Plumey,* 115 F.3d at 65 (emphasis ours). *See also Méndez–Palou v. Rohena–Betancourt,* 813 F.2d 1255 (1st Cir.1987); *Juarbe–Angueira v. Arias,* 831 F.2d 11 (1st Cir.1987). As we just concluded above, plaintiff's position was that of a technocrat devoid of even a modicum of policymaking or confidential responsibilities. Defendants, therefore, are not entitled to qualified immunity on plaintiff's First Amendment claim.

Finally, defendants' allegation that the monetary damages sought by plaintiff are barred by the Eleventh Amendment plainly lacks merit. Defendant López–Nieves was sued both in his official and personal capacity. Suits against state officials in their personal capacity are not suits against the employing governmental entity and, accordingly, do not raise Eleventh Amendment concerns. *See Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985). Accordingly, the motion for summary judgment filed by defendants Carlos López–Nieves, his wife and their conjugal partnership (**docket entry 17**) is hereby DENIED.

We turn now to the Cross-motion for Partial Summary Judgment filed by plaintiff, where he seeks a finding of liability against defendants based on a determination that plaintiff's rights under both the First and Fourteenth Amendment were infringed. Although we have found that the position formerly occupied by plaintiff was not "political", and determined that defendants are not shielded from damages under either qualified or Eleventh Amendment immunity, it remains to be adjudicated whether plaintiff was in fact discharged for political reasons in violation of his First Amendment rights. The summary judgment record has not been adequately developed by plaintiff to address this issue. On the other hand, and as stated above, issues of fact preclude the Court to adjudicate the claim brought under the Fourteenth Amendment. Accordingly, plaintiff's cross-motion for partial summary judgment (**docket entry 31**) is also DENIED.

The case will be set for pretrial and trial by separate order.

SO ORDERED.